We're going to hear argument next in numbers 17, 35, 14, 18, 12, 33, 18, 1857, United States v. Jabar. Ms. Lee. Thank you, Your Honor. Good morning. May it please the Court. Can everyone hear me? Yes. Yes. Thank you. My name is Tiffany Lee and I represent the United States. This case is simply about the fraud that the defendants perpetrated on the United Nations and the later false statements they made during the course of the investigation into the fraud. The District Court here erred in granting the defendants' motions for judgments of acquittal with regards to Counts 1 and 4 of the indictment charging wire fraud conspiracy and wire fraud when it determined that the government failed to prove an intent to defraud the United Nations. As this Court is aware, defendants generally face a heavy burden when it comes to Rule 29 motions because District Courts must draw every reasonable inference in favor of the government. And as this Court recently stated in United States v. Archer last week, the District Court must be careful to consider any reliable trial evidence as a whole rather than on a piecemeal basis. When you apply that standard to the evidence presented to the jury, it cannot be said that in this case there is no reasonable juror who could have found that the defendants possessed an intent to defraud the United Nations by entering into the cooperation agreement with the United Nations where it agreed that it would spend the money for the purposes of the grant proposal, which was to build a radio station to support the development of women's issues in Iraq. And then turning around and spending that money immediately on Mr. Jabbar's own personal agenda. Didn't the government concede before the District Court that the agreement with the UN didn't require the dollar-for-dollar spending on the radio station? I don't. They may have said that, but the reality is, Your Honor, when you're looking at what was before the jury and what was instructed to the jury, whether or not dollar-for-dollar was required, the whole idea of this benefit was not as the District Court cast it. The District Court cast this as being a bargain for a radio station, but that is not what was presented before the jury. Basically, the United Nations indicated that these are proposals in which the United Nations decides. It gets a variety of proposals from different non-governmental organizations with projects to help fulfill the United Nations mission of peacekeeping and development around the world. This one was for the purposes of a radio station to promote messages of gender equality. But didn't they respond to the radio station? I'm not sure what the difference is between the two. What I really would like you to do, and I hope you will do it before the argument is over, tell us precisely what the scheme to defraud was and what the evidence is of the intent to defraud going into the scheme. That's really what I need to understand from you, because I'm not quite clear. You can talk about the facts and say, well, there was a fraud here, but I want to know precisely from you what the precise description of what the fraudulent conduct was. The fraudulent conduct. Not just skimming, but the fraud, the intent of the fraud and what the plans were for the fraud. What was the scheme? The scheme, Your Honor, is basically to get money from the United Nations in order to allow Mr. Jabbar to have the ability to repay his debt. The skimming is part of the fraud. Basically, when organizations are applying for grants, the idea of the grant is that all that money is going to be spent for purposes to effectuate the grant. Here, they promised that this money was going to be spent in order to effectuate the purposes of the grant, but they knew that that was not the case. That's not an express promise in the agreements. It's something that's sort of a gut instinct that one would have in looking at this case. I think the district court is drawing a distinction between a scheme to defraud and then getting money and then deciding, after you get the money, to skim it. That normally is not fraud, it's theft. It may be theft, it may be a breach of contract, it may be all sorts of things, but it might not be fraud as such. I think it is fraud, only because here we have a not-for-profit that's purporting to be an expert in an area in which it has no expertise, in which many of its board members did not even know it was engaging in this. It was almost like this was all for the purposes of just trying to get some money to Mr. Jabbar. Do you agree with this? That's inaccurate. That may have been part of the purpose, but that wasn't the entire purpose. The entire purpose was to get the money over to build the radio station, at least part of it. The major part of it was to build the radio station. Now, it may be that, and maybe this is what I thought you were going to say, look, they asked for too much money. That indicates that they weren't going to need all this money, and that's what evidence is, the fact that they planned to skim right from the beginning, and therefore it was fraudulent. But that's not your argument. Your Honor, the grant proposal was actually for $500,000. That was what the U.N. was prepared to invest in this project. The reality is, when they entered into this, they knew that all the money was supposed to be spent towards that, or at least for the purposes of the fraud, and then to turn around immediately... Did you put any evidence in, or must it just be an inference, and this is Rule 29, so inferences are certainly hermetic, but did you put any evidence in that, in fact, they believed that they could actually build this station for far less than $500,000, and yet they asked for $500,000, which was really a misstatement, a misrepresentation of the cost of this project. That would be a pretty clear fraud. I understand that. I believe there was evidence with respect to that, but the reality is, they basically applied for this grant and said that we have the expertise, we have the know-how, we can run a radio station, they get the money, and immediately turn around and spend it on Mr. Jabbar's expenses, and then proceed to... Can I ask you a question? Judge Walker said a moment ago that the idea that the specific money would be spent on the radio station was not an express promise. Do you agree with that? When I look at it, the U.N. asked for this accounting of where all the money was that the accounting that Jabbar submitted was fraudulent, they still cut off the remainder of the contract because it was submitted late and didn't have enough documentation. So maybe... Doesn't that show that the U.N. really did care about the specific dollars being spent on the radio station? Well, I think that's precisely the government's point, is that the evidence before the jury showed that precisely they cared because of the fact that, you know, I think there was testimony from Sumatha Guha, the U.N. representative, who stated that, you know, we need to know how this money is being spent because of the fact that this is not the U.N.'s money. This is money from donor nations across the world or member countries. Well, then how do you respond to the argument that they ultimately spent over $350,000 on the radio station and money is fungible? So we have this line of cases that say if the purported victim of a fraud gets the benefit of their bargain, there isn't an incentive to fraud. But they didn't get... But they didn't get the benefit of the bargain. Again, that's like treating the bargain as saying, well, there's a dollar-for-dollar radio station out there. But this is not a situation where the United Nations contracted out because they were looking for an entity to build them a radio station. This isn't an investment to the citizens of Iraq to hopefully foster and plant seeds to grow messages of gender equality. So it's somewhat intangible in terms of what it's looking for. I think maybe what you're saying is that spending the particular grant money on the radio station was part of the bargain that they wanted. Is that right? I'm saying that the bargain was to spend the money as per the grant proposal. That is actually the bargain, not the radio station itself. What it is is the commitment to spend the money and produce something that will have the results that... We have these two different lines of cases that go under the heading of two different theories about no sale or benefit of the bargain and then a separate theory about the right to control dollars. Now, are you now describing a right to control theory because you're saying they didn't just want the radio station, they also wanted... had the right not to be deceived into having the radio station in a certain way? Yes, because of the fact that it naturally flows from entities that are giving grants out. I mean, this is not... If you're, for example, let's say you're the federal government's National Science Foundation. There are plenty of fraud cases in which the grantee performs the research, but there's fraud conducted in terms of how that money is being spent. And the federal government requires the same type of accounting that the United Nations does. And that's simply what's happening... Why do we treat these two theories as different? I mean, is the right to control theory a different theory from the benefit of the bargain theory? It sounds like you were just saying that having the money spent a certain way was part of the bargain. So maybe the right to control theory is sort of a special case of the benefit of the bargain theory. Does that sound right? I kind of think of it along both lines here because this is how this case ended up being cast. Once we accepted that Countrywide was to be applied, we kind of had to kind of step into... The government here kind of noticed that there were almost, I guess, contract-like obligations pursuant to the Standard Cooperation Agreement. But now kind of standing and taking a harder look at this, it's not quite the typical benefit of the bargain type of case because of the fact that this is not two entities negotiating for a bargain. It is one entity saying to the other, I like your proposal. I'm going to give you this money. But in order for you to get the additional money and in order for us to know where this money is going to, you need to give us good accounting. And that's what Jabbar and Bowers on behalf of their organization did. But as soon as they signed it... I'm just asking you, so should we think of that, the requirement for the accounting, as part of the bargain or should we think about it as the UN's right to control the use of its money or is there not a difference between those two things? I think under these particular circumstances, there's not a difference between those two things. So in looking at it in terms of the benefit of the bargain, the question is, well, what is the bargain? And this is where the district court and the government diverge. Because we said at the outset when they entered into this relationship, it was with the intent not to spend all that money for the purposes of the grant. They were not going to be abiding by the promise, which was the bargain. A minute ago, you said that the bargain was to spend the money, and I'm quoting, as per the grant proposal. Now, I think what you meant to say maybe was spend the money in a way that conforms to a grant, a normal grant. That is, that the grant is designed for a specific purpose and no other. Correct. It's not how the money is ultimately ends up and whether the project is completed. It is whether the money was spent in a proper way. Yes, Judge Walker, that's exactly what I was trying to get to. But I think that is exactly the nature of the quote-unquote bargain. I don't even think bargain is the correct word. The fact that there's a contract or an agreement with the entity to build a station and ultimately it's built is evidence of one aspect of the bargain, but not the whole thing. Exactly. The whole thing you're saying on a Rule 29, you could get there by inferences based upon what's in the agreement and also what the common understanding is of grants, that they are not to be wasted. Correct, Your Honor. Exactly. On purposes that the U.N. has no interest in. Correct. I mean, the U.N. has the broader interest in terms of development, but it's not as if as soon as it's built or as soon as it's running, as soon as all that money has been dispersed and spent as it should, it's not as if someone can call and complain afterwards and say, U.N., this station is X, Y, and Z, right? The money during the course of the grant life has been spent as it should. Here, that's not what happened here. Let me ask you this. Let's assume, you know, we have the grant here, the same deal, but it turns out that the station can be built for $300,000 instead of $350,000. That's not this case, but let's assume that. And they cross every I and dot every I and cross every G, and the first $300,000 of the $350,000 is spent on the station, and they're left with $50,000 left over. Is it a fraud under those circumstances for them to keep the money and spend it for themselves, or must they turn it back? What do you do with that extra $50,000 that's left over? Yeah, I think that would be a slightly different scenario because of the fact that, you know, I think for some of those types of grants, you would just either disclose that the $50,000 is done or whatever, but it's different. Would you say that you could keep the other $50,000 because you were actually saving money, and maybe you were cost-conscious in building the station, and therefore you would realize more of a profit as a result of the grant? Or would you say that it would have to be returned to the UN? And I guess that would probably be embodied in the agreement, right? If it's not embodied in the agreement, and they're giving you a grant, and you come in under budget, I don't know that there's any necessary obligation on the part of the recipient of the money to pay it back. Correct, because, you know, the money has already been, you know, dispersed. The accounting is all good. You know, the quarterly reports are all good. And so, you know, the UN could say, listen, you may need that for a rainy day in order to, if you want a special guest to talk about women, right? But that's not this case. And that's why, to Judge Menashe's point about right to control, like, again, as a grantor, you know, that's charged with, you know, this money, they have a right to have granted this money to a more deserving organization or to an organization that's... There's another aspect, I think, that perhaps works in your favor. And that is that when the money is provided, there is no... It's part of the bargain that no unnecessary risk of non-completion be attained and occur. And when they're spending up front, then there is... That increases a risk of non-completion because you don't know how much it's ultimately going to cost. And now the chances of being able to cover the cost are reduced by the skimming. And that's something that's contemplated by the parties when they enter into the contract. Do you follow me? Yeah, I do follow you. And, you know, here it's kind of worded differently, right? It's worded in terms of the UN gives you $350 upfront. You cannot start spending it until, you know, until you've entered into the agreement. Once you start spending, though, you need to account for everything before you can get the remainder of the $150. Right. So... And here, you know, when they finally did submit their quarterly report, they didn't, you know, to the extent that... And this goes to the defendant's good faith argument. To the extent that they're saying, well, no, we could have spent it on anything because no matter what, at the end of the day, we were going to get you that radio station. Then what's the harm in reporting to the United Nations? Hey, we spent, you know, $30,000 to repay Mr. Jabbar's debts. But, you know, don't worry about it. It's all going to go to the radio station. But that's not what they did. And in addition to that... That's some evidence of guilty intent. The fact that they covered it over. Correct. But whether it's evidence of fraud versus just evidence of some other crime that might not have an intent to defraud in the same way is, you know, it could be either one. So it helps you, but it doesn't get you all the way there. I think, you know, I think at least it's there to allow the jury, again, to give a reasonable inference in terms of saying, no, these parties did not go in with the intent of, no matter what, we're going to build a station. They went in and, as Mr. Jabbar even admitted, I, you know, such is life. Money is money. I had debts to pay. So as soon as that money came in, he was going to be like he needed to spend whatever he needed to spend. And it's not as if Mr. Jabbar said to Special Agent Klimczak, wait a minute, why are we here? Again, you know, we built the station. It's up and running. It's great. All things are great. You know, we did what we were, what we had promised to do. That's not, you know, how Mr. Jabbar or Ms. Bowers talked about this. And I think the most compelling piece of evidence is that check, right? That was written in $7,219. That was disguised as a VAL radio payment, but in fact went to pay off Mr. Jabbar's Town of Tonawanda tax liability. Thank you, counsel. I think we'll have the argument. You've reserved some time for rebuttal, so we'll hear from you again. But let's hear now from the appellees. First counsel for Mr. Jabbar, Ms. Drake. Good morning. May it please the court and counsel, Jamesa Drake on behalf of Steve Jabbar. The district court correctly granted defendants' Rule 29 motion on the wire fraud and wire fraud conspiracy charges for the five reasons set forth in our brief. Chief among them is the fact that the government admitted that the evidence failed to establish defendants' intent to harm. And that admission is binding on appeal now. Also, as your Honor pointed out at the very beginning, the heart of the matter here is the government also admitted that there was no provision in the agreement between the United Nations and the defendants that the money could not be commingled or that dollar-for-dollar spending was required. This appears on page 21 of our brief, and in the transcript, it's that joint appendix 1933. On top of that, the government would have this court... On that point, on that point, can I just ask? So the government now says, well, they acknowledge there's no express requirement for that. But if you look at the agreement where the U.N. required an accounting of every dollar spent, why isn't that a requirement that all those dollars needed to be spent, that it was important to the U.N. in the agreement that every dollar needed to be spent on the station? Well, I have two responses to that. The first is to take a step back and say the government hinges much of its argument on what it believes the nature of the agreement was between the United Nations. But they failed to introduce the dispositive document that sets forth those terms, which is the program document. That doesn't appear in the record. And that forces them to then argue to this court that there's a variety of different things that this court should be able to infer about what the parties may have meant. The district court's ice cream sandwich hypothetical, we think, really drives this point home. So if this court will recall, the district court posited, imagine there are two accounts. $350 from the United Nations goes into one account. Money from private funds exists in a different account. The court asked the government if these private funds are used exclusively to build the radio station and the grant money is used to buy ice cream sandwiches for everybody, is there a problem? And the government said that there wasn't. The essential fact here is that miraculously... Well, can I ask you about that? So under the contract, if they did do the ice cream sandwich hypothetical, would they have to submit an accounting that said that the grant money was spent on ice cream sandwiches? Wouldn't that be required by the contracts? Well, I know that the government makes that argument, but interestingly, they don't point to anything in the cooperation agreement, and of course, we don't have the program document to say that. All we know is that the United Nations wanted an accounting at the end of the first reporting period. The reason that they did not disburse the remaining $150,000 was in large part due to the fact that they just did not get their report on time. But the report did go through... Right, but doesn't that actually indicate that it's really important to the UN? So if the UN decides we're going to cut off this project because we're not getting our accounting report on time, it shows that an accurate accounting is really important to the UN and isn't it weird for us to say or for a court to say that this isn't really part of the bargain? It was so important to the UN that they cut off the project in the middle because they got it late, and then a court is going to come along and say, well, even if it was fraudulent, it wouldn't have mattered to the UN because they got the benefit of the bargain. Isn't that an odd conclusion for a court to make? No, and frankly and respectfully, I think the government tries to play a little bit fast and loose about what it thinks this agreement was. They argue it wasn't a contract, it was a grant and therefore that has legal meaning somehow. I struggle with that argument. Today they say the bargain was not actually to build a radio station, rather the bargain was that the money be spent in a particular way, notwithstanding the fact that we don't have the project document and the government has conceded that those express terms don't appear in the cooperation agreement, which is in the record. I think that a fraud isn't necessarily confined to the terms of a contract. It can be beyond that. Sometimes you don't even have a written writing when you have a fraud. That's part of the picture, but it's not the complete picture. Your Honor, I wouldn't necessarily disagree with that, except that in this case, the government is asserting that evidence of fraud is this failure of dollar-for-dollar expenditures. Then I think the court has to ask itself, does that constitute a breach of contract? Our front-line argument is no, that's not a contract term. Our fallback argument is... We're not going to apply contract terms, but we might imply an understanding upon which all grants are given and look for support for that. I'm talking about a jury on Rule 29. They found him guilty. Now it's been overturned. There might be sufficient evidence to go to a jury outside the express terms of the contract in terms of the actual bargain expressed in the contract to inferences from language in the contract and from other conduct elsewhere to say that the promise given by your client was different. That's what I'm saying. That's the area in which I'm having trouble. I understand, and Your Honor, I think I would put a finer point on it, which is to say this court should not, or at the very least, it should be very reluctant to, draw inferences about an agreement between two parties when, by the government's own admission, it failed to introduce a dispositive document that memorialized their agreement. But even if we could assume that the lack of dollar-for-dollar expenditure constituted a breach of contract, we then run into the fact that, as a matter of this court's case law, that alone does not establish fraud,  if we take a $30,000 bond or a $40,000 view of this case, it's so unusual in the pantheon of fraud cases. The defendants really miraculously established a radio station in record time in a war zone, and because this radio station is broadcasting pro-women programming, exactly the programming the United Nations wanted, it's become a target of attack and had to be essentially saved at times. This is a situation where the United Nations wanted precisely the radio station that the defendants built and built ... You said miraculously, but how did they end up building it if they spent the grant money on other purposes? Well, in fact, that question was posed to one of the government's witnesses, and this came out through the government's witnesses. The defendants incurred substantial personal debts by taking out loans from people that they knew who were so enamored with the radio station and the programming that it was providing that they were very willing to contribute to help fund it, which is why, at the end of the first reporting period,  $374,000 on the radio station and by the time it was all done, they ended up spending $600,000 on the radio station. All the difference between what the UN gave and what they ultimately spent. But even before the grant from the UN, they were trying to build the radio station already, right? It's not like the idea originated with the UN grant. Right? Your Honor, the record evidence here is a little bit confusing. They had the idea for the radio station before they applied for the grant, obviously. There is some confusion about different iterations of what the grant proposal was and whether the defendants were fully aware that the United Nations was on its own sort of wanting to impose these quarterly reporting requirements. And there's still ambiguity as to whether Mr. Jabbar himself was aware of these added requirements. But at any rate, they had a preliminary agreement and the evidence in the record suggests defendants believed that was the agreement. And at that point, they began spending their own money to prepare to build this radio station. Then the second iteration of the contract was finalized. On December 15th, the grant money was released. Okay. Can I ask you a question about this rights of control versus no sale issue? So if the UN had decided, well, okay, we're going to build this radio station for women and we want it to be a woman-owned business that completes the project and that's important to us and Mr. Jabbar deceived the UN into thinking that even though he's the owner that actually someone else was the owner and he's a woman-owned business and so he obtained the contract. Would we say that that deception didn't matter and go to the benefit of the bargain because they got the radio station that they had bargained for in the beginning? Is that how that case would come out? Well, and I think that my answer is going to harken back to Your Honor's question about is a right to control theory really different than a false pretenses theory? I certainly don't disagree that in the hypothetical you could contract or you could envision a scenario much like Your Honor just did where you just have a right to control issue. But were that case to come up to this court on appeal the first thing it would have to ask itself would be did the government assert that theory of liability during the trial? And the reason that the government's right to control theory fails in this case is there was no right to control theory asserted in the indictment. There was no request for a right to control theory. Yeah, but this goes to my question as to whether this is a purely hypothetical case. So my thought is in my hypothetical the U.N. is not just bargaining for a radio station but wants a radio station built by a woman-owned business. I mean, can't a counterparty bargain for that? Isn't the identity of the counterparty sometimes part of the bargain?  As I said, this is a purely hypothetical because a hypothetical, of course, is not the facts of our case. Under Your Honor's hypothetical, I mean, I think that that could give rise to a right to control theory. But it is distinct from the false pretenses theory. I say that not only because this court's case law has delineated that distinction but when the government opts to proceed under a right to control theory either as a principle theory or an alternative theory it pleads that in the indictment there has been a special right to control jury charge. None of those things happened in this case. This right to control theory was asserted for the very first time on appeal and so the district court was correct to reject it. But if the, let's say that the U.N. had put into the contract the requirement that it be a woman-owned business I mean, I guess my suggestion is I don't see why that's not part of what it's bargaining for. I understand that we have these cases that are treated separately although actually the cases kind of converge a little bit. Right? Like in Starr we said that there isn't a lot left of the right to control theory and there's some cases where we cite the two lines of cases sort of interchangeably. So I don't know how separate they are but in my hypothetical at least isn't it the case that you could have a contract that makes clear that part of the bargain is the identity of the counterparty? Yes. But I say that I sort of struggle to see how that translates here where there was no such... I guess my thought is this. So if in fact the contract did require accurate accounting and it was important to the U.N. that they get information on where all the money was spent and in fact in this case they cut off the project upon not receiving that why couldn't we conclude that that's part of the bargain? That the U.N. wanted to know where all the money was spent and wanted a trustworthy counterparty that would spend all the dollars on the project? Thank you for that, Your Honor. That helps. Of course I say that this court should not infer that as a term of the contract primarily given the state of the record. Nevertheless, at best all you can squeeze out of that here is that there was a breach of contract. You then have to ask, well, what is the evidence that at the time the contract was entered into by the parties they had no intention of actually performing? And this has been the fundamental problem with the government's case from the beginning. Of course they had an intention of performing but they also had an intention of taking money off the top right away. There were two intents. That's what the government's arguing here. They're saying forget about, just focus on the $65,000 or even a portion of it if some of that money was used to pay back prior loans in furtherance of the project. Look at the money that was actually spent on the particular individuals. To take care of phone bills and credit card bills and that kind of thing. If you build that into your grant in your mind look, that's what I want because I thought I'm really in debt and I need to pay off these bills and that's coming off right away which is what the government's arguing the inference is that can be drawn then it doesn't matter what else the money's going to go on. Of course, yes, that is what the government is arguing and the problem with that argument the reason it doesn't get them past the sort of end line here is that it goes back to the ice cream sandwich example. They conceded that this dollar for dollar matching was not part of the agreement. The evidence very clearly shows that at the same time that individuals were using money for personal use they were receiving money from other sources that was specifically earmarked for the radio station and there was that receipt of private money far outpaced the money that was spent for personal use. I know we've been going for a while I don't know if the court would indulge but I do want to say one way to think about this is that an interrogation at a police station doesn't always qualify as custodial but that is sort of the hallmark. What we have here is, if you will, a police station on steroids. There is absolutely no question for all of the reasons that we set forth in our brief that Mr. Javar was in the custody of these FBI agents he was quite literally at their mercy and had no ability to sort of terminate the interview and go about his evening walking 10 miles back through a heavily guarded compound in order to end things. Isn't Mr. Javar a military contractor? Wasn't he interacting with military officials at military facilities all the time? Does that matter? It does. It strengthens our position. He was a civilian. He was working with military officials. The evidence in the record is that he understood that if he did not comply with the directive of his military superiors he would be, quote, on the next plane out. He was told by his military superior that the FBI wanted to question him. There is no other inference that can be drawn from that. If he believed, and obviously he did... Is it something that any government employee or any contractor whenever they're asked questions it's always a custodial interrogation because they're employed by the government and feel like they have to answer no matter what? Is that a general rule or is there something special about Mr. Javar? I believe that I need it in order to win. Instead, I'm asking this court to recognize the factual findings made by the district court which is here there were armed guards, concrete barriers a passcode was required to enter the facility escorts were required inside the facility Mr. Javar's escort had a visible sidearm and the facility was completely unfamiliar to Javar. He'd never been there before. This facility was located close to a dangerous neighborhood which was a 10-minute drive away from the U.S. Embassy. That combined with the fact that his military superior told him this interrogation was going to be taking place and the fact that during the interrogation he was confronted with evidence of what the government believed was criminal activity checks all of the boxes and then some for what this court would consider custodial. Okay, I think we have the arguments unless there are further questions I'm going to move to counsel's report. Go ahead. I think we covered all the points that you wish to make but when you started your argument you said that there were the five points in your brief and you got through the first two dollar for dollar was the second one and I just wondered if you were satisfied that you made all your arguments on the remaining three as a part of the discussion that ensued. Thank you. I don't have any specific reasons in our brief why the district court's ruling on the Rule 29 motion was granted. I feel comfortable with the discussion that we've had on that issue. The only other thing that I will add is that if this court is inclined to agree that the statement should be suppressed then insofar as Mr. Jabbar is concerned it need not reach the false statements issue because the statement made during that interrogation gave rise to the false statements charge. Thank you. We have a question from counsel for Apelli Bowers. Mr. Mahoney. Good morning, Your Honors. I guess that a preliminary observation is that it's a rather preposterous idea that somebody would think of enriching themselves by building a radio station in a war zone and what really is important to me is to emphasize the fact that we are dealing with an indictment and that theory was that there was something that some representation that the defendants had made in their application for this grant or in the contracts or whatever that was inconsistent with their use of the funds that the diversion of the funds constituted a violation of some promise to the U.N. Now, you can hypothesize all sorts of other ways that the U.N. or the government could complain about what happened but they have the obligation to the defendant can't be convicted of any theory or facts other than what were contained in that theory of criminality in the indictment and what actually happened at the trial is very quickly in the trial maybe realizing that at that point that they really didn't have this problem with these misrepresentations to prove their application. I understand that there is this question about the government conceding the ice cream sandwich hypothetical or maybe the lack of a dollar for dollar requirement but just the agreement itself I know that there was a commitment to provide an accurate accounting and that the U.N. cut off the project when they didn't receive it so isn't that a commitment to provide these dollars? Why isn't that part of the agreement? Well, first of all, the fraud requires a misrepresentation Now, the misrepresentation there's no evidence that they misrepresented at the time of the agreement that they intended to submit a fraud some sort of false accounting More of the point though No witness for the government Well, I mean, come on, a jury could infer that there was something wrong with that accounting but the government said what's wrong with the accounting it's all they didn't say that they put money in their pocket which was reimbursement for money that had been spent on the radio station the government said, oh, they didn't put that in that accounting and every witness from the government and every witness who was asked said that the purpose of that accounting was not to say, not to trace where the money went No witness for the government ever said that there was anything wrong with any line item in that accounting Our own witness, Bushford Jameel did point out, and we questioned her about this there were some differences in the accounting compared to the budget because, for example, they forgot that they really needed a generator so they had a cheaper transformer and they bought a generator The government never claimed that that was anything improper about that and, in fact, the agreement allowed for differences So it's a hoax to say that there's something false or fraudulent about that accounting It was accurate, there were no witnesses, it wasn't Every witness said it was only there to show the expenditures The government, for the jury, kept saying that wasn't in there about whether or not they had paid off Mr. Shabar's mortgage So, really, that's sort of a red herring here in terms of the intent The other thing is that the scheme was complete at the time of the disbursement of the money This is something that the government had stipulated to or had said many times during the course of the case The judge acknowledged this and so that was something that happened afterward It could only come up if it were a problem with the accounting as a, quote, breach of the agreement And, of course, then we get into the country-wide issue But, in fact, it wasn't part of the scheme of the fraud The government stipulated that the fraud was complete with disbursing the money They made that stipulation, they made that litigation position because there were money laundering counts as well And they occurred after the money was disbursed And so if the government overlapped the scheme of the fraud with a money laundering count they would have to have dropped out the money laundering count So, at this point, that's sort of a dead end as far as I'm concerned, relying on this accounting wasn't fraudulent So, the question was really, truly, as under the indictment was there representation made to the UN that this very specific dollars being given to OKI would be dedicated to the radio station And the government conceded it wasn't And so, really, every other theory they're arguing is a variant theory that was never pledged The thing about the right to control just so I can digress to that for a second Of course, that wasn't pled The right to control theory originally began as a question of how do we deal with cases where there doesn't appear to be any pecuniary harm to an entity that's been misrepresented to and they're complaining about it So, right to control was a substitute for property that they have a property interest in the right to control their spending None of those cases ever said that that means that they have strings on funds given to a grantee or given to a vendor to buy something as to how they spent that money And I think the other thing about the right to control theory that Judge Villardo missed and I think it's critically important is that theory also requires the misrepresentation So, what was the misrepresentation that had to do with the right to control theory here? The misrepresentation Can I just clarify your view on this? Do you think that the right to control theory and the no sale theory are two different and independent theories under our cases and they need to be pleaded differently? It sounds like you were saying that actually the right to control theory just comes in when there isn't another identifiable property interest and so you couldn't have both theories applied to the same case The same theory applied to different circumstances Is that your position? Well, my big problem with the right to control theory in this case is that there's no affirmative misrepresentation that's alleged in the indictment or even said now as to what was misrepresented to the government about how it was going to use the funds It was always about the use of the funds not about programming or the amount of music or something like that The misrepresentation that the government alleges with respect to the right to control theory was the concealing from the government of what they were going to do with those dollars That is a problem of not disclosing something as a basis for misrepresentation A fraudulent misrepresentation based on a failure to disclose only comes about when there's a fiduciary duty to disclose And so that was nowhere present here The government occasionally tried to sneak this in by claiming that Bushra Jameel was a co-defendant or a co-conspirator and so that there could be some argument that she didn't disclose that she was friends with Mr. Jabbar But of course there were no other conspirators alleged besides Jabbar and Bowers But the concept of misrepresentation if you look through the government's argument their claim of misrepresentation relating to not disclosing what exactly they were going to do with these dollars once they got into the O.K. account So you have no basis for a right to control theory here because there was no fiduciary duty on their part to tell them exactly how they were going to count for this money in their account So I'm just curious about the relationship between these theories So I understand that you're saying the accounting was accurate and there wasn't the misrepresentation But I mean in principle if it were clear that someone wanted an accounting that was accurate and that was important to how the contract would be carried out and there was enough evidence to infer that they didn't intend to provide an accurate accounting that would be enough You just say that as a factual matter there aren't the facts on which one could make those inferences here Is that right? That's right but also you'd have to show that whatever that intent was that they had at the time Even if they planned to If the diversion violates the agreement the fact that they did the diversion immediately upon receiving the money you might infer that it was intended to do that But that's a big if. The government has conceded that that wasn't part of the agreement They have nothing to say that there was any agreement to sequester these funds So that's really a big problem Counselor, there's confusion here over what we mean by agreement There was obviously an agreement to build a radio station But the question is really whether there was a broader agreement a second agreement, a broader agreement of which the first agreement was an aspect but not the complete picture of the broader agreement The broader agreement implied how the money was going to be spent and the manner in which it would be spent Absolutely There's been no evidence Part of the confusion is that the language in the agreement with the UN said that they agreed to use the funds in strict accordance with the program document That was a larger document that encompassed a $2 million worth of grant in Iraq that was not before the court and nobody ever testified that that document itself said anything about exactly how the funds would be accounted for by a grantee Nobody ever testified as to what the contents might be All we have is an indictment which suggests that there was something about these written agreements and it listed the terms of the agreement in the indictment and you can't vary from that I never asked for a bill of particulars in this case because the indictment was very specific There were at least two paragraphs of this standard cooperation agreement There was some requirement that the funds only be spent be dedicated to the radio station and it turned out that the government had absolutely no proof of that and ended up conceding that they never did and so that's the case and you can hypothesize things that the government had the intent not to accurately account for it when there was absolutely no evidence It's not a question of the weight of the evidence there was no evidence whatsoever that there was anything inaccurate about the accounting but even if there were the government would still have to prove  that's a separate scheme to the fraud and once they had those funds they were their funds they were entitled to do those funds what they wanted they could reimburse Jabbar for his expenditures already and they could reimburse Bowers for her expenditures and it turns out, it's quite clear in the record they informed the UN at the time they were considering finally approving this that they already had spent between $64,000 and $84,000 on this and having been told that the money was going to be forthcoming they heard that the Israelis were borrowing money because they knew there wasn't going to be enough time for them to get the money from the UN and start building the radio station and have it ready in time for the elections which were coming in the spring and Bushra Jamil testified that one of the reasons they approved the OKI proposal despite the fact that they didn't have any experience in radio stations, although they had a lot of people before they even had all the grant funds were able to turn them around and send them... I think we have the argument on that issue I know that we've run over a lot so I'll just ask if you have any final point you want to make on a different issue Well, yeah, I think it's a very different issue and this goes to the 1001 charge even the most well-meaning witness is going to make a mistake in calling events in the book, in interviewing a witness and thinking about the ways they might be able to squeeze that witness or that target by charging them with making a false statement especially in unrecorded interviews as this was here and there are a lot of cases that have talked about the problems of the misuse of 1001 to manufacture crimes and I'm quoting Justice Ginsburg and Brogan in 1998 and so the protections under 1001 are that the government have jurisdiction over the conduct and it's a matter within the jurisdiction of the United States and materiality. In this case by the time he interviewed Mrs. Bowers Klimczak told the jury that his conceptualization of what was possibly wrong with all this, he completed his investigation they traced all the money and they were coming to see Mrs. Bowers that his idea of what was wrong was that once OPI got the money they diverted the money away from what he thought was a radio station. He didn't look at how they built the radio station, he didn't care and so as I think one of your honors mentioned well maybe that's an embezzlement, maybe that's a theft or something like that, but it is not a federal offence and of course as we know even later on when the government tried to take it... Well, I'm talking about jurisdiction Oh, I see, jurisdiction But still, they were investigating the entire project at that point Well, what's the federal basis for that? He could investigate my personal sciences but that doesn't make it a federal matter within the jurisdiction of the United States Because if you say... It might in combination with other evidence and what's in the knowledge of the investigator can't reduce the materiality component of it The materiality component goes to whether or not it relates in some way to the investigation that they're involved in and will be material It might lead to further information Well, we see that so often in cases where they say, well it could do this, it could do that Here we have an agent and you're jumping ahead of me, Judge, because this is on materiality This agent said that there was no... and the direct testimony I asked him to follow the leads that she gave him about the fact that they had spent money over in Iraq already that counterbalanced and the county evidence proved this was absolutely true later on and he said that whatever she said to him wasn't going to change his mind one way or another whether he understood correctly or falsely when he presented her with these checks So this isn't a question of hypothesizing Well, you know, it could have affected the investigation Not only did he declare, and I think the government was bound by this, that it wouldn't have affected the investigation one way or another but we also know that Deborah Bowers gave him these leads which is an IRS agent, he's familiar with the idea You're basically saying that once an agent has a pretty firm idea of what the facts of the case are that any questions directed to that point of a subsequent witness are per se immaterial Well, it may not be but in this case he agreed they were and the government never even redirected him on that question So of all the cases we have where they say well, you know, things might affect the investigation we don't know, and so on this is the only case where the agent has gotten on the stand it wouldn't have affected it one way or another So unless we say materiality is just a formalism and doesn't mean anything how do you ignore this? And the government says nothing about it it refuses to address that issue But I still think in terms of jurisdiction, again is there a federal crime in agents' offices of OKI putting money in their pockets? I think we have that argument from the government, again, on rebuttal Thank you, Your Honor Very briefly on a couple of points raised by my colleagues with respect to, you know the false statements issue as Judge Walker noted materiality is defined as capable of influencing a decision maker and certainly the answer to the question that OKI had been granted from the U.N. whatever answer would be capable of influencing a decision maker and so therefore, regardless of whether or not Special Agents' Act was going to act on it specifically the fact remains it's still a material statement for purposes of 2001 Turning to Ms. Drake's point with respect to, again viewing the totality of the circumstances simply because the interview was held at the Baghdad Operations Center does not mean that at any point in time you cannot infer that Mr. Jabbar felt he was free to leave that discussion He voluntarily went there had a, for the most part, cordial discussion no talks, he was not placed in handcuffs and indeed under the totality of the circumstances the District Court did not err with respect to ruling to deny suppression of the statement that Mr. Jabbar made and then finally I know we've been discussing the Rule 29 point over and over again ultimately I would just leave with the fact that under the standards of Rule 29 the question is drawing every favorable inference every reasonable inference for the government is this a situation where the jury was properly instructed as to wire fraud they were also given a country-wide instruction is this a case where there's absolutely no evidence for which a reasonable juror cannot convict the defendants here and the government admits that that is not the case What about the government agreement below that's the ice cream sandwich hypothetical can you predict your argument now on appeal that there needs to be the dollar-for-dollar spending That was on the basis of the argument before but I guess the whole question is whether or not is there evidence to support that the defendant, from which a reasonable juror can infer that there was an intent to defraud the United Nations at the time that they entered into this grant relationship with the United Nations that's the government assertion now Your point is that the ice cream sandwich hypothetical doesn't get to the question of fraudulent intent That's assuming that there's no intent that assumes no intent to defraud and then the money is properly spent but out of other funds and then there's money left over Correct Correct So it refers more to the question of using the harm aspect of the definition of intent to defraud How can you say the UN suffered any harm because they still got what they got So that's going to that weighing in for the jury Your point is that fraud can be established in two ways You can show harm and that usually is sufficient You can show harm because it's a scheme to defraud It's not a completed crime in that sense It's in co-hate You need to show that fraudulent intent has to be proved separately and you think there's sufficient evidence here to establish that Exactly. We believe there's sufficient evidence as to book So in terms of the way the jury was instructed they were instructed Doesn't the harm to the government have to be if you're going to show harm, a property loss I mean, under the cases that basically dealt with honest services early on I guess it was Skilling that established that there had to be a property interest involved and now there is an honest services statute but before the honest services statute the Supreme Court had narrowed it down to a property interest So that's one of the aspects that we have to look at here as to whether there was in effect a property interest and a loss to the government on that Yes, and that's why despite the fact that the right to control was not pledged we're trying to show that it's inherent in the United Nations interest and to this end there was testimony from the United Nations representatives about the fact that they are held accountable they have to account to the donor nations making contributions to the United Nations So there's a property interest in receiving future donations that was affected that would discourage donor countries from contributing Correct The grant process is separate and apart from a procurement process The grant is looking at projects that are in line with the United Nations mission So it's like the American Cancer Society if it gives a grant for cancer research but then the money is being spent on ice cream sandwiches how does it account to its donors? So unless there are any other questions the government rests on its grief The case is submitted I wasn't asked about reserving time for rebuttal The appellate can reserve time for rebuttal but the appellee doesn't get a sure rebuttal So thanks very much I think we have the arguments and we have the papers and the case is submitted